**32**

DET059115

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

-------------------------------------------------------------------------------------------------------------------

**PETER BORMUTH,**

Plaintiff,

Case:2:13-cv-13726
Judge: Battani, Marianne O.
MJ: Michelson, Laurie J.
Filed: 08-30-2013 At 11:48 AM
CMP BORMUTH V. COUNTY OF JACKSON (D A)

V

Magistrate:

**COUNTY OF JACKSON**

Defendants.      **PLAINTIFF'S COMPLAINT**

-------------------------------------------------------------------------------------------------------------

**Peter Bormuth, Plaintiff**

**In Pro Per**

142 West Pearl Street

Jackson, Michigan  49201

(517) 787-8097

earthprayer@hotmail.com

## PLAINTIFF'S COMPLAINT

### STATEMENT OF CASE

The County of Jackson opens County Commissioner meeting with an invocation. Citizens who come to the Commissioner's meeting to comment on public business are asked to stand and bow their heads for this invocation which is led by one of the County Commissioners and made in the name of Jesus Christ. The prayer ends with an Amen. The County of Jackson Policy Manual has no posted rules regarding this invocation/prayer. The Plaintiff contends this invocation/prayer is a violation of the First Amendment Establishment Clause (*"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;..."*). This Court has authority to review the legitimacy and legality of these prayers under both the Establishment Clause of the **First Amendment** as applied to the States under the **Fourteenth Amendment** and under **Article 2, Section 3** of the Constitution *("The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority...")* since the clear intent of our Government is expressed in the **Treaty of Tripoli, Article 11** ("As the Government of the United States of America is not, in any sense, founded on the Christian religion;...") which was debated and ratified by the U.S. Senate and signed into law by President John Adams in 1797. The United States Supreme Court has consistently held that the Christian religion cannot be established in this county and that sectarian legislative prayer in the name of Jesus Christ is forbidden by law.

\

## RELIEF REQUESTED

The Plaintiff seeks an immediate emergency injunction from the Court halting these prayers made in the name of Jesus Christ. The Plaintiff has secular business before the County Commissioners and will be attending Commissioner Meetings regularly over the next 6 months while a new waste plan and recycling program is developed for the County. The Plaintiff requests that this Court take immediate action to prevent Jackson County from subjecting him to prayers in the name of this god whose followers killed his ancestors, since it is a direct violation of the Establishment Clause of the Constitution. **Title 42 USC § 1983** (*"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"*) also gives the Plaintiff the right to redress for this violation of his right to religious freedom, his privileges as a citizen to be free from established religion, and his immunity from having jesus christ and the Christian religion shoved down his throat when he comes to conduct public business.

## STATEMENT OF STANDARD

The Plaintiff is proceeding *pro se* and reminds the Court that the Supreme Court ruled in ***Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)** that *"Federal Rule of*

2.

Civil Procedure 8(a)(2) requires only "a short plain statement of the claim showing that the pleader is entitled to relief" and that the statement need only "give the defendant fair notice of what the...claim is and the ground upon which it rests." **Bell Atlantic v. Trombly, 550 U.S. 544, (2007**) (slip op., at 7-8) (quoting **Conley v. Gibson, 355 U.S. 41, 47 (1957)).** "A document filed pro se is "to be liberally construed," **Estelle, 429 U.S., at 106**, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. (internal quotation marks omitted). Cf. **Fed. Rule Civ. Proc. 8(f)** ("All pleadings shall be so construed as to do substantial justice")." **Erickson v. Pardus, 551 U.S. 89, 127 S.Ct.2197, 167 L.Ed.2d. 1081 (2007)."** Since the Plaintiff is a pro se litigant, these pleading standards should apply.

## STATEMENT OF FACTS

On Tuesday July 23, 2013 the Plaintiff attended the Jackson County Commissioners meeting held in the Jackson County Building, 5th Floor, at 7:00pm. The Plaintiff went there to speak on the closing of the Jackson County Resource Recovery Facility, (JCRRF), a small mass burn municipal waste combustor. The untreated ash quench water from this facility has been discharged directly into the Blackman Township sewer system which conveys it to the City of Jackson Wastewater Treatment Plant (WWTP) on Lansing Ave. The plant does not test or treat for dioxins and the effluent has been discharged into the Grand River for 25 years under the City of Jackson's NPDES Permit # MI 10023256. The City issued User Permit #28 to the JCRRF and does not require them to test for dioxins. Dioxin is commonly used to refer to a family of toxic chemicals that all share a similar chemical structure and a common mechanism of toxic

action. This family includes seven of the polychlorinated dibenzo dioxins (PCDDs) and ten of the polychlorinated dibenzo furans (PCDFs) and well as twelve of the polychlorinated biphenyls (PCBs). The Clean Water Act classifies 2,3,7,8-TCDD as a priority pollutant. The 16 other CDDs/CDFs are regulated as nonconventional pollutants in NPDES permits. Dioxin is a highly toxic chemical and is a known human carcinogen. Dioxin persists in the environment and can accumulate in the tissue of fish, other wildlife and humans. It has caused cancer, liver dysfunction and toxic effects in laboratory animals. Dioxin is an unwanted by-product created by the garbage incineration combustion process. The JCRRF is the only waste incinerator in the State of Michigan which discharges a high volume of ash quenching water into a sewer system. Up to 65,000 gallons per day of ash quench water are discharged directly into the sewer system. This occurs because the design of the JCRRF is such that the water level in the ash quench tank must be maintained above a certain level to seal off the incinerator and maintain a negative pressure inside the incinerator. In order to do this a continuous supply of fresh water is provided to the ash quench tank. The overflow is then discharged into the sewer system and thus the Grand River. All other incinerators in the State of Michigan recycle their quench water back into the quenching process so that any loss is only by evaporation rather than disposal through a sewer system. The State of Michigan Department of Corrections recently informed Jackson County that they would no longer be purchasing the steam or power generated by the JCRRF. The Plaintiff intended to argue for the closing of this polluting facility and advocate for the establishment of a County wide single stream recycling facility, rather than the Commissioners searching for ways to keep this design-deficient facility open. The Plaintiff came prepared with a telephone interview he had conducted with Jill Haygood, Outagamie County

(Wisconsin) Recycling Administrator, and provided copies of this document to the Commissioners later in the meeting (see Appendix A).

To the Plaintiff's shock and astonishment, the meeting began with the audience asked to stand to the following prayer by Commissioner Gail Mahoney: *"Bow your heads with me please. Heavenly father we thank you for this day and for this time that we have come together. Lord we ask that you would be with us while we conduct the business of Jackson County. Lord help us to make good decisions that will be best for generations to come. We ask that you would bless our troops that protect us near and far, be with them and their families. Now Lord we wanna give you all the thanks and all the praise for all that you do. Lord I wanna remember bereaved families tonight too, that you would be with them and take them through difficult times. We ask these things in your son Jesus's name. Amen."* (see Appendix B). The Plaintiff felt like he was in Church. The Plaintiff felt like he was being forced to worship Jesus Christ in order to participate in the business of County Government. The Plaintiff felt like this prayer was offensive to Jews, Muslims, Hindus, Buddhists, Sikhs, Wiccans, Pagans, Confucians, atheists, agnostics, and secular humanists who do not acknowledge Jesus Christ as god. The prayer was also offensive to the Plaintiff on a personal level, since his ancestors were killed by followers of jesus christ, most recently in Christian Nazi Germany. As a Pagan and Druid, the Plaintiff is not willing to honor the religion of Jesus Christ which has caused so much destruction and harm on this planet. The Plaintiff remained at the meeting only because of his own perception of the importance of his business. He provided the Commissioners with his document, and participated in the 5 minute public comment period. Then he departed.

5.

The following day the Plaintiff went to the Jackson County offices and asked to see their policy manual and asked for a copy of the July 23, 2013 meeting. (Meetings are videotaped by the County). Adam Brown, Deputy Administrator/Controller provided the Plaintiff with a copy of Policy No. 4040 of the County of Jackson Policy Manual entitled "BOARD RULES, ARTICLE IV, AGENDA (see Appendix C) and explained that there were no specific rules or policy statements regarding the invocation. Mr. Brown also kindly asked Diane Armstrong, Administrative Assistant, to provide the Plaintiff with a CD copy of the July 23, 2013 meeting, which the Plaintiff picked up later in the week.

On August 17, 2013, the Plaintiff stopped by Chairman Shotwell's shoe store, Miller's Shoe Parlor at 103 W. Michigan Ave in downtown Jackson to discuss whether Cascades Park in Jackson had been used as a landfill or dump by the County before the construction of the falls and to communicate the Plaintiff's feelings that the invocation/prayer to Jesus Christ violated the Establishment Clause and was offensive to non-believing citizens. The conversation was cordial. On Tuesday August 20, 2013, the Plaintiff again attended the County Commissioner's meeting held on the 5th Floor of the Jackson County Building at 7:00pm. Once again the meeting opened with an invocation, this time by Commissioner David Elwell: *"Please rise. Please bow our heads. Our heavenly father we thank you for allowing us to gather here in your presence tonight. We ask that you watch over us and keep your guiding hand on our shoulder as we deliberate tonight. Please protect and watch over the men and women serving this great nation, whether at home or abroad, as well as our police officers and firefighters. In this we pray, in Jesus name, Amen."* (see Appendix B). Once again, the Plaintiff felt like he was in church. Once again, he felt like he was being compelled to honor the Christian god. Except for

6.

the Plaintiff, all the audience members rose and bowed their heads as instructed. The Plaintiff remained seated and was very aware of his forced isolation and the fact that these Christians deliberately intended to establish their religion. The Plaintiff felt like his position on the secular issues he came to discuss were likely prejudiced by his failure to join in the invocation. The Plaintiff rose after the invocation and joined the rest of the audience for the Pledge of Allegiance. The Plaintiff then used the public comment period to address this legislative prayer that violated the First Amendment, rather than addressing the design defects of the waste incinerator which was his original intention. The Plaintiff had brought notes for two separate 5 minute speeches with him to the meeting. The Commissioner's meeting on August 20, 2013 included an agenda item involving the Second Amendment, and the Commissioners later voted to allow County employees with CWP's to carry handguns at work. Administrator/Controller Michael Overton stated in a newspaper story posted on M/Live that Jackson County was being proactive in support of the Second Amendment. The Plaintiff therefore though it was appropriate to address the First Amendment Establishment Clause issue at that meeting. The Plaintiff thought Jackson County should respect our entire Constitution and not selectively choose which Constitutional provisions they comply with, and left the meeting determined to file this complaint to compel the County to abide by the Establishment Clause of the First Amendment.

## LEGAL ARGUMENT

First the Plaintiff would like to note that while this case involves legislative prayer, it differs from other cases currently before the Courts in that it was not a chaplain or guest speaker who

7.

gave these invocations before the Jackson County Commissioner's meetings, but the Commissioners themselves in their role as elected officials. The Establishment Clause of the First Amendment specifically states: *"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof;…"*. Thomas Jefferson explained the view of the Founders on the expected behavior of Federal officials in his letter to the Danbury Congregation of twenty six Baptist churches written while he was sitting President in 1802: *"Believing with you that religion is a matter which lies solely between man and God(s), that he owes account to none other for his faith or his worship, that the legislative powers of government reach actions only, and not opinions. I contemplate with sovereign reverence that act of the whole American people which declared that their (federal) legislature should 'make no law respecting an establishment of religion, or prohibiting the free exercise thereof,' thus building a wall of separation between church and state."* The passage of the Fourteenth Amendment extended this protection to the States and obviously the Jackson County Commissioners are a form of State Government. Therefore they must abide by the wall of separation which the Founders established.

The statements of the Founders with regard to the Establishment Clause make their intentions perfectly clear, as does the Treaty of Tripoli. Thomas Jefferson wrote, *"Difference of opinion is advantageous in religion. Is uniformity attainable? Millions of innocent men, women and children, since the introduction of Christianity, have been burnt, tortured, fined, imprisoned: yet we have not advanced one inch towards uniformity. What has been the effect of coercion? To make one half the world fools, and the other half hypocrites. To support roguery and error all over the earth."* In the same text Jefferson goes on to say *"…it does me no injury for my*

8.

neighbor to say there are twenty gods or no God. It neither picks my pocket nor breaks my leg."

(Thomas Jefferson, *Notes On the State of Virginia*, Query XVII, 1782). James Madison, the

'Father of the Constitution' wrote: *"During almost fifteen centuries has the legal establishment*

*of Christianity been on trial. What have been its fruits? More or less in all places, pride and*

*indolence in the clergy; ignorance and servility in the laity; in both superstition, bigotry, and*

*persecution. What influence in fact have ecclesiastical establishments had on civil society? In*

*some places they have been seen to erect a spiritual tyranny on the ruins of the civil authority. In*

*many instances they have been seen upholding the throne of political tyranny. In no instance*

*have they been seen the guardians of the liberties of the people. Rulers who wished to subvert*

*the public liberty have found an established clergy convenient auxiliaries."* (James Madison,

*"Memorial & Remonstrance Against Religious Assessments, 1785).* Madison was also clear on

the practice of legislative prayer. After he left the Presidency, Madison wrote on two separate

occasions that the legislative chaplaincy in Congress was a violation of the Establishment Clause

(see Elizabeth Fleet, *Madison's "Detached Memoranda"* 3 Wm. & Mary Q 534, 536-59 (1946) &

Letter from James Madison to Edward Livingston, July 10, 1822 in *The Founders Constitution*,

Philip B. Kirkland & Ralph Lerner eds. , 1987). John Adams, our second President who signed the

Treaty of Tripoli into law, wrote: *"Do you think that a Protestant Popedom is annihilated in*

*America? Do you recollect, or have you ever attended to the ecclesiastical Strifes in Maryland,*

*Pennsylvania, New York, and every part of New England? What a mercy it is that these people*

*cannot whip and crop and pillory and roast, as yet in the United States! If they could they*

*would."* (Letter to Thomas Jefferson, May 18, 1817). The historical record is clear. The

invocation/prayer by the Jackson County Commissioners violates the intention of our Founders and the Establishment Clause of the Constitution.

The Plaintiff notes that this Court must uphold all treaties signed by the United States. **Article 2, Section 3** of the Constitution clearly states that: *"The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority...".* The **Treaty of Tripoli, Article 11 (1797)** gives expression to the doctrine & law which the Court must uphold in this case: *"As the Government of the United States of America is not, in any sense, founded on the Christian religion;..."* This treaty was debated and ratified by the full U.S. Senate and signed into law by President John Adams in 1797 without any objection being expressed to this specific language. Therefore this Court cannot uphold prayer by government officials in the name of Jesus Christ as it is a violation both of the Constitution of the United States and of this treaty, which the Courts are obligated to uphold.

Case law is equally clear with regard to the establishment of the Christian religion. The classic statement is by MR. JUSTICE DOUGLAS writing for the majority in *U.S. v. Ballard,* **322 US 78 (1944):**

> *"The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect.'* **Watson v. Jones, 80 U.S. 679 (1871)** *The First Amendment has a dual aspect. It not only 'forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship' but also 'safeguards the free*

10.

*exercise of the chosen form of religion.'* **Cantwell v. State of Connecticut,** **310 U.S. 296** *Freedom of thought, which includes freedom of religious belief, is basic in a society of free men.* **West Virginia State Board of Education v. Barnette,** **319 U.S. 624** *It embraces the right to maintain theories of life … which are rank heresy to followers of the orthodox faiths. Heresy trials are foreign to our Constitution. Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs......The Fathers of the Constitution were not unaware of the varied and extreme views of religious sects, of the violence of disagreement among them, and of the lack of any one religious creed on which all men would agree. They fashioned a charter of government which envisaged the widest possible toleration of conflicting views. Man's relation to his God was made no concern of the state. He was granted the right to worship as he pleased and to answer to no man for the verity of his religious views… The First Amendment does not select any one group or any one type of religion for preferred treatment."*

The Jackson County Commissioners have selected one group for preferred treatment: believers in Jesus Christ.

In ***Zorach v. Clauson,*** **374 U.S. 220 (1952)** MR. JUSTICE DOUGLAS, for the Court, reiterated:

11.

> *"There cannot be the slightest doubt that the First Amendment reflects the philosophy that Church and State should be separated. And, so far as interference with the 'free exercise' of religion and an 'establishment' of religion are concerned, the separation must be complete and unequivocal. The First Amendment, within the scope of its coverage, permits no exception; the prohibition is absolute."*

This absolute prohibition is not being observed in Jackson County. An exception has been made for the religion of Jesus Christ.

And MR. JUSTICE BLACK, for the Court, in ***Torcaso v. Watkins*, 367 U.S. 488 (1961)** used this language:

> *"We repeat and again reaffirm that neither a State nor the Federal Government can constitutionally force a person to profess a belief or disbelief in any religion. Neither can constitutionally pass laws or impose requirements which aid all religions as against nonbelievers, and neither can aid those religions based on a belief in the existence of God as against those religions founded on different beliefs."*

The Jackson County Commissioners attempted to coerce the Plaintiff into professing a belief in a deity he despises, Jesus Christ, he came to participate in an official government meeting.

In *McGowan v. Maryland,* **366 U.S. 420 (1961)** MR. JUSTICE FRANKFURTER wrote for the Court:

> *"The Establishment Clause withdrew from the sphere of legitimate legislative concern and competence a specific, but comprehensive, area of human conduct: man's belief or disbelief in the verity of some transcendental idea and man's expression in action of that belief or disbelief."*

The Plaintiff does not believe in the divinity of Jesus Christ. No Pagan believes in the divinity of Jesus Christ. Neither do Jews, Muslims, Hindus, Buddhists, Sikhs, Wiccans, Confucians, atheists, agnostics, animists, pantheists, or secular humanists believe in the divinity of Jesus Christ.

In *Larson v. Valente*, **456 U.S. 228, 244 (1982)** the Court held:

> *"[t]he clearest command of the Establishment Clause"; is that "one religious denomination cannot be officially preferred over another."*

Why then, can the Jackson County Commissioners invoke Jesus Christ at the beginning of their official governmental meetings in violation of all this precedent and law? Once again the Plaintiff would like to emphasize that while this case involves legislative prayer, it differs from other cases currently before the Courts in that it was not a chaplain or guest speaker who gave these invocations before the Jackson County Commissioner's meetings, but the Commissioners themselves in their role as elected officials. The prayers specifically demand audience

participation. Chairman Shotwell asked the audience to rise. Commissioner Gail Mahoney requested that the audience "Bow your heads with me please." Commissioner David Elwell instructed the audience "Please rise. Please bow our heads." The prayers specifically speak on the Government's behalf. Commissioner Mahoney says "Lord we ask that you would be with us while we conduct the business of Jackson County. Lord help us to make good decisions that will be best for generations to come." Commissioner Elwell prays "We ask that you [Lord] watch over us and keep your guiding hand on our shoulder as we deliberate tonight." Both prayers specifically invoke Jesus Christ. Commissioner Mahoney: "We ask these things in your son Jesus's name. Amen." Commissioner Elwell: "In this we pray, in Jesus name, Amen." Both invocations end with an 'Amen' – a specifically christian ending to a prayer. We Pagans say "Blessed Be." The Plaintiff notes that children were present at these Jackson County Commissioner's meetings. In both cases they were there to lead the Pledge of Allegiance which immediately follows this sectarian prayer on the agenda. This is deliberate religious coercion of the worst possible kind affecting young impressionable minds and is clearly prohibited by *Lee* v. *Weisman,* 505 U.S. 577 (1992) and *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000). That these prayers carried an "obvious and inherent risk" of affiliation and coercion cannot be denied by this Court.

The Supreme Court has repeatedly struck down any practice of legislative prayer that invokes Jesus Christ, even when a guest speaker or official chaplain gives the invocation. In *Lemon v. Kurtzman*, 403 U.S. 602 (1971) the Court held that to survive an Establishment Clause challenge the governmental action must satisfy three independent requirements: *1) "it must have a secular legislative purpose; 2) its principal or primary effect must be one that neither*

14.

advances nor inhibits religion; and 3) it must not foster an excessive governmental entanglement with religion." The Court retreated slightly from this standard in *Marsh v. Chambers,* **463 U.S. 738 (1983)** where they allowed legislative prayer, noting its long history and the fact that the chaplain had removed all references to Jesus Christ.

In *County of Allegheny v. ACLU Greater Pittsburgh Chapter*, **492 U.S. 573 (1989)**, the Court found that, even if history and custom had saved non-sectarian legislative prayer in **Marsh**:

> "history cannot legitimate practices that demonstrate the government's allegiance to a particular sect or creed." Additionally, the Court reiterated that "not even the 'unique history' of legislative prayer, can justify contemporary legislative prayers that have the effect of affiliating the government with any one specific faith or belief." The Court continued, "The legislative prayers involved in **Marsh** did not violate this principle because the particular chaplain had 'removed all references to Christ.'"

Therefore, while non-sectarian legislative prayer could fall within the constraints of the *Marsh* exception, this legislative prayer by the Jackson County Commissioners, which has the effect of proselytizing for Jesus Christ and advancing the Christian religion, while demonstrating the government's allegiance to and affiliating the government with this particular faith or belief, cannot fall within the constraints of the *Marsh* exception, regardless of history or custom.

16.

In *Wynne v. Town of Great Falls, South Carolina*, **376 F.3d 292 (2004)** the 4th Circuit Court of Appeals engaged in an analysis of the constitutional validity of legislative prayer. In *Wynne*, a Wiccan citizen objected to the strongly sectarian nature of prayers, including numerous invocations of Jesus Christ, led by City Council members prior to meetings. The court held that any sectarian invocations of deities in legislative prayer are demonstrative of affiliating the government with a particular sect or creed and/or advancing a particular faith or belief. The court also averred that the *Marsh* use of the word "*advance*" indicates something far less coercive than the attempt at conversion necessary to incite a charge of proselytization. Additionally, both the presence and participation of town citizens were crucial to the court's determination that the Town Council had attempted to advance the Christian faith. In the court's words:

> *"Marsh does not permit legislators to do what the district court, after a full trial, found the Town Council of Great Falls did here— that is, to engage, as part of public business and for the citizenry as a whole, in prayers that contain explicit references to a deity in whose divinity only those of one faith believe. The invocations at issue here, which specifically call upon Jesus Christ, are simply not constitutionally acceptable legislative prayer like that approved in Marsh. Rather, they embody the precise kind of "advancement" of one particular religion that Marsh cautioned against. Accordingly, we hold the district court did not err in finding that*

16.

the challenged prayers violated the Establishment Clause and enjoining the Town Council "from invoking the name of a specific deity associated with any one specific faith or belief in prayers given at Town Council meetings. Likewise, the court reiterated the very narrow nature of the Marsh exception. The court stated:

We note that this conclusion accords with the Supreme Court's apparent intent to confine its holding in Marsh to the specific "circumstances" before it—a nonsectarian prayer preceding public business, directed only at the legislators themselves. We also note that, in the more than twenty years since Marsh, the Court has never found its analysis applicable to any other circumstances; rather, the Court has twice specifically refused to extend the Marsh approach to other situations. Similarly, we and our sister circuits have steadfastly refused to extend Marsh. Indeed, as the district court noted, the Town Council has not cited any case upholding prayers by legislative or other public bodies that explicitly invoke one religion in preference to others. We refuse to do so here. Such a holding would, we believe, be plainly contrary to "[t]he clearest command of the Establishment Clause ... that one religious denomination cannot be officially preferred over another."

In *Bacus v. Palo Verde Unified School District*, **52 Fed.Appx. 355 (9th Cir. 2002),** a case involving teachers who sued their school board over the constitutionality of opening meetings with prayer, the court stated:

> "These prayers advanced one faith, Christianity, providing it with a special endorsed and privileged status in the school board. Some religions accept Jesus Christ as the Messiah, some do not, and some people do not believe in any religious faith. **Solemnizing school board meetings 'in the Name of Jesus' displays 'the government's allegiance to a particular sect or creed."** (bold emphasis added)

In *Hinrichs v. Bosma*, **440 F.3d 393 (7th Cir. 2006)** the Seventh Circuit observed that all cases squarely confronting the constitutionality of *"sectarian legislative prayer…have concluded that **Marsh** prohibits the practice."*

It is clear that the Jackson County Commissioners have violated the Establishment Clause of the First Amendment and that they did this wilfully and intentionally after the Plaintiff had complained to Chairman Shotwell of this practice. Accordingly **Title 42 USC § 1983** is applicable and gives the Plaintiff the right to redress for this violation of his right to religious freedom and this violation of his privilege as a citizen to be free from established religion, and this violation of his cherished immunity from having jesus christ and the Christian religion shoved down his throat when he comes to conduct public business at a governmental meeting. These prayers by the Commissioners established a religion and a god, Jesus Christ, in whom Jews, Muslims,

\19

Hindus, Buddhists, Sikhs, Wiccans, Pagans, Confucians, atheists, agnostics, pantheists, animists, and secular humanists do not believe. People holding these various beliefs are also citizens of the United States and enjoy the same full rights of citizenship as christians.

The Plaintiff is a Pagan and Animist. Webster's dictionary defines animism as: " *1) a doctrine that the vital principal of organic development is immaterial spirit; 2) attribution of conscious life to objects in and phenomena of nature or to inanimate objects; 3) belief in the existence of spirits separable from bodies.*" The Online Dictionary observes that pagan comes from Latin meaning *"rural dweller",* connoting a *"non-christian"* or *"follower of a polytheistic religion"* but notes that the word *"has recently evolved to become a general term for the followers of magical, shamanistic, and polytheistic religions which hold a reverence for nature as a central characteristic of their belief system."* The Plaintiff has held these views publicly and sincerely since 1978, publishing books, essays, poetry, & music on the subject. The **Civil Rights Act of 1964** states: *"To be a bona fide religious belief entitled to protection under either the First Amendment or Title VII, a belief must be sincerely held, and within the believer's own scheme of things religious."* **(USCA Const. Amend 1: Civil Rights Act 1964 701 et seq., 717 as amended 42 USCA 2000-16).** As the dictionary definition indicates, Pagans are Polytheists. We worship the Milky Way, the Sun, the Moon, the Planets, and the spirits of ancestors, but our primary deity is the Mother Earth. The Commissioners invocation to Jesus Christ was a personal affront to the Plaintiff since for the last 20 years Jackson County has been dumping untested wastewater containing dioxins into the Grand River, literally poisoning the Plaintiff's Deity since Pagans hold that water is sacred and that rivers are the bloodstream of the Earth. And then when the Plaintiff came to this secular governmental body to comment on these matters involving

Jackson County's waste stream, and came to argue from a sound scientific and economic perspective and not from his personal religious feelings, he was forced to acknowledge Jesus Christ as god. The Court should remember that Adolph Hitler acknowledged Jesus Christ as god. Hitler wrote in 1933 that his plan for a triumphant Nazism was modeled on the Catholic Church's traditional "tenacious adherence to dogma and its fanatical intolerance" and noted approvingly that "it had not hesitated to destroy the altars of the heathens." Hitler went on to say: "The Jew is harmful to us...My feeling as a Christian leads me to be a fighter for my Lord and Savior." The Court might reflect that the entire population of Nazi Germany was Christian, except for the Jews and Gypsies who soon disappeared. The Plaintiff treasures the Constitutional protections created by the Founding Fathers in securing the United States as a country free from the intolerance of an established religion and he will never acknowledge Jesus Christ as god. The Courts have traditionally held that religion is beneficial to public life. But the historical record of Christianity proves that it is not beneficial to public life. Molded by Christian doctrine, Christian believers suppressed traditional religious liberty in the ancient world and brutally forced conversion on pagan citizens of the Roman Empire. Later they converted Europe with the same methods. They enslaved Africans, established modern racism based on skin color, committed genocide against Native Americans, burnt heretics, witches and Jews, deprived women of civic and reproductive rights, cut forests, polluted waters, killed off the beaver, bison, & wolf – to enumerate only a few of their misdeeds. Their influence on our body politic is every bit as noxious today as it was in the past. Therefore it is essential that religion should be restricted by the Courts to the private sphere where it was wisely placed by our Founders. The alternatives are religious fascism where only Christians have civic rights or

2 υ.

war between Christians and the followers of all other faiths. Let the words of John Adams resonate with this Court: "*What a mercy it is that these people cannot whip and crop and pillory and roast, as yet in the United States! If they could they would!*"

## CONCLUSION

WHEREFORE the Plaintiff humbly requests that this Honorable Court grant the relief sought.

Respectfully submitted by,

Peter Bormuth

In Pro Per

142 West Pearl St.

Jackson, Michigan 49201

(517) 787-8097

earthprayer@hotmail.com

Dated: August 30, 2013

21 .

**CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2013, I mailed a copy of this complaint together with a summons to the Jackson County Clerk, 312 S. Jackson St., First Floor Court Building, Jackson, MI 49201 by certified mail.

By: Peter Bormuth

In Pro Per

142 West Pearl Street

Jackson, MI 49201

(517) 787-8097

wardance@live.com

Dated: August 30, 2013

**Appendix A**

Jill Haygood (920) 832-4710

Outagamie County (Wisconsin) Recycling Administrator

Jill.Haygood@outagamie.org - www.RecycleMoreOutagamie.org/

Recommended consultant – Joe Sloan (714) 348-6350

How many people do you serve?

Outagamie County population – 2011 – 177,000 – Our Jackson County population 2011 - 160,000

Did you issue bonds to capitalize the project?

**Facility cost:**

**Equipment cost:**

**What type of equipment?**

Has the facility been self-supporting since start up?

What is the square footage of your facility?

How many acres of land does the facility use?

(Very rough guess)

How many jobs did you create?

Do you use prison labor for sorting jobs?

Labor costs for 2012: County          & subcontractor

How much of the total waste stream do you recycle?

Do you recycle tires? (rubber?)     Do you recycle carpet?      Carpet pad?

Do you recycle wood?     Do you compost organic matter?

Total volume of recycled materials?

How much revenue does each category generate yearly?

Do prices fluctuate?                                        General trend?

Have you had any businesses relocate to your area to manufacture products from the recycled materials?

Waste Haulers

Do you use private refuse haulers?

What is your tipping fee?

Do you have the haulers pre-sort recyclables?

Do you have a flow control ordinance that requires haulers to bring collected recycling to your facility?

*Total Cancer cases per year in Jackson County in 1987 when the JCRRF started operating:* **1987 –** 1 512

*Total Cancer cases per year in Jackson County after 20 years of JCRRF operation:* **2008 –** 2 839

Appendix B

Jackson County Commissioners Meeting, July 23, 2013

Invocation by Commissioner Gail Mahoney:

*"Bow your heads with me please. Heavenly father we thank you for this day and for this time that we have come together. Lord we ask that you would be with us while we conduct the business of Jackson County. Lord help us to make good decisions that will be best for generations to come. We ask that you would bless our troops that protect us near and far, be with them and their families. Now Lord we wanna give you all the thanks and all the praise for all that you do. Lord I wanna remember bereaved families tonight too, that you would be with them and take them through difficult times. We ask these things in your son Jesus's name. Amen."*

---

Jackson County Commissioners Meeting, August 20, 2013

Invocation by Commissioner David Elwell:

*"Please rise. Please bow our heads. Our heavenly father we thank you for allowing us to gather here in your presence tonight. We ask that you watch over us and keep your guiding hand on our shoulder as we deliberate tonight. Please protect and watch over the men and women serving this great nation, whether at home or abroad, as well as our police officers and firefighters. In this we pray, in Jesus name, Amen."*

Transcribed by Peter Bormuth from the official videos of the Jackson County Commissioners Meetings which are posted online at www.co.jackson.mi.us/

# COUNTY OF JACKSON
# POLICY MANUAL

# BOARD RULES

**POLICY NO. 4040**

## ARTICLE IV
### AGENDA

Section 4.1     The agenda shall be prepared and distributed to members prior to any regular meeting. The time frame for distribution shall be 2 days prior to the scheduled meeting (not counting weekends and holidays).

Section 4.2     The agenda of the Board shall be as follows:
1. Call to Order
2. Invocation
3. Pledge of Allegiance
4. Roll Call
5. Approval of Agenda (Additions and deletions as proposed by the Administrator/Controller or Board Chairman to Agenda)
6. Awards and Recognitions
7. Communications and Petitions
8. Special Orders/Public Hearing(s)
9. Public Comment
10. Special Meetings of Standing Committees
11. Consent Agenda (roll call)
    A. Minutes
    B. Standing Committee Items
    C. Claims
    D. Other Items (as presented by Administrator/Controller or Board Chairman)
12. Standing Committees
    A. County Policy                          C. Human Services
    B. County Affairs & Agencies     D. Personnel & Finance
13. Unfinished Business
14. New Business
15. Public Comment
16. Commissioner Comments (individual Commissioners will be given an opportunity to address the Board at this time)
17. Closed Session (if convened by the Board) (roll call)
18. Adjournment

Section 4.3     All communications and petitions received at a meeting from the general public shall be received only by a majority vote of the Board. Communications and Petitions shall be presented by the County Clerk and distribution of written materials shall be provided.

Adopted 12/19/00
Revised 06/20/06, 4/17/07, 1/18/11

# COUNTY OF JACKSON
# POLICY MANUAL

# BOARD RULES

POLICY NO. 4040

## ARTICLE IV (Continued)
### AGENDA

Section 4.4    Special Orders may be scheduled by the Board Chairperson or through action of Standing Committees.

Section 4.5    Members of the public desiring to address the Board shall follow the established public comment rules. (Also see Section 5.8 for additional opportunities to address the Board.)

   1.    Each individual will state their name.

   2.    There will be a five (5) minute time limit when an individual addresses the Board under Public Comment at the opening of the meeting.  An individual may only address the Board once under this section of the agenda.

   3.    There will be a three (3) minute limit when an individual addresses the Board under Public Comment prior to the close of the meeting.  An individual may only address the Board once under this section of the agenda.

   4.    Members of the Board of Commissioners may not address the Board during Public Comments.

Section 4.6    Public hearings shall be advertised in a newspaper of general circulation.  It shall be held as advertised.  There will be no distribution of written communications of material without formal acceptance by the Board.  The Chairperson shall open the public hearing.  Following the opening of the hearing, any formal presentation or administrative comment shall be presented through the Administrator/Controller or designee.  The Chairperson shall authorize any comments from the public.  All comments from the public shall be directed to the Chairperson or may be redirected with permission of the Chairperson.  Following public comment, a motion to close by the Board shall be in order.  Board discussion on the item will immediately follow the public hearing unless otherwise suggested or restricted.

Section 4.7    Any item not requiring a roll call vote may be listed under the Consent Agenda.  Consent Agenda items will be listed according to the Standing Committee order. Any County Commissioner has the authority to remove an item(s) from the Consent Agenda and the item(s) will be considered under the appropriate Standing Committee report, and voted on separately.

# New Lawsuit Check List

**Instructions: Put a check mark in the box next to each appropriate entry to be sure you have all the required documents.**

| | |
|---|---|
| ☑ | Two (2) completed **Civil Cover Sheets**. |

| | | |
|---|---|---|
| ☒ | Enter the number of defendants named in your lawsuit in the blank below, add 2 and then enter the total in the blank.<br><br>___1___ + 2 = ___3___ **Complaints.**<br><sub># of Defendants</sub>      <sub>Total</sub><br><br>Received by Clerk: _____ Addresses are complete _____ | Case:2:13-cv-13726<br>Judge: Battani, Marianne O.<br>MJ: Michelson, Laurie J.<br>Filed: 08-30-2013 At 11:48 AM<br>CMP BORMUTH V. COUNTY OF JACKSON (D A) |

| | |
|---|---|
| ☐ | If any of your defendants are **government agencies**:<br>Provide two (2) extra copies of the **complaint** for the U.S. Attorney and the Attorney General. |

| **If Paying The Filing Fee:** | **If Asking That The Filing Fee Be Waived:** |
|---|---|
| ☑ Current new civil action filing fee is attached.<br><br>Fees may be paid by check or money order made out to:<br><br>*Clerk, U.S. District Court*<br><br>Received by Clerk: _____ Receipt #: _____ | ☐ Two (2) completed **Application to Proceed in District Court without Prepaying Fees or Costs** forms.<br><br><br>Received by Clerk: _____ |

**Select the Method of Service you will employ to notify your defendants:**

| Service via Summons by Self | Service by U.S. Marshal<br>(Only available if fee is waived) | Service via Waiver of Summons<br>(U.S. Government cannot be a defendant) |
|---|---|---|
| ☑ Two (2) completed **summonses** for each defendant including each defendant's name and address.<br><br><br><br><br>Received by Clerk: _____ | ☐ Two (2) completed **USM – 285 Forms** per defendant, if you are requesting the U.S. Marshal conduct service of your complaint.<br><br>☐ Two (2) completed **Request for Service by U.S. Marshal** form.<br><br>Received by Clerk: _____ | ☐ You need not submit any forms regarding the Waiver of Summons to the Clerk.<br><br><u>Once your case has been filed, or the Application to Proceed without Prepaying Fees and Costs has been granted</u>, you will need:<br>• One (1) **Notice of a Lawsuit and Request to Waive Service of a Summons** form per defendant.<br>• Two (2) **Waiver of the Service of Summons** forms per defendant.<br><br>Send these forms along with your filed complaint and a self-addressed stamped envelope to each of your defendants. |

**Clerk's Office Use Only**

Note any deficiencies here:

Rev. 4/13

*(Rev. 12/12)*                    **CIVIL COVER SHEET**                    County in which action arose _Jackson_

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Peter Bormuth

**DEFENDANTS**
County of Jackson, Michigan

**(b)** County of Residence of First Listed Plaintiff _Jackson_
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
142 W. Pearl St
Pro Se  Jackson, MI 49201

Case: 2:13-cv-13726
Judge: Battani, Marianne O.
MJ: Michelson, Laurie J.
Filed: 08-30-2013 At 11:48 AM
CMP BORMUTH V. COUNTY OF JACKSON (DA)

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

[Form checkbox list of nature of suit categories — none marked except:]
☒ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing: First Amendment Establishment Clause, US Constitution Article 2 Section 3
Brief description of cause: Jackson County Commissioners use prayer to Jesus Christ to open meetings

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ ___  JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY**  JUDGE ___  DOCKET NUMBER ___

DATE 8-30-13   SIGNATURE OF ATTORNEY OF RECORD: Peter Bormuth

**FOR OFFICE USE ONLY**
RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE

PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?               ☐ Yes
                                                                           ☐ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.        Other than stated above, are there any pending or previously
          discontinued or dismissed companion cases in this or any other      ☐ Yes
          court, including state court? (Companion cases are matters in which  ☐ No
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :